UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JEFFREY WHITNEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 14-40066-LTS |
| NBC OPERATING, LP and ADRIENNE SANTOS | ) ) ) ) | |
| Defendant. | ) ) ) | |

ORDER ON REPORT AND RECOMMENDATIONS (DOC. NO. 68)

December 2, 2015

SOROKIN, J.

On November 13, 2015, Magistrate Judge Kelley issued a Report and Recommendations ("R&R"), Doc. No. 68, on a Motion for Summary Judgment from Defendants NBC Operating, LP ("NBC") and Adrienne Santos ("Santos") (collectively "Defendants"), Doc No. 54. After careful consideration and de novo review of the R&R in light of the objections filed by Plaintiff Jeffrey Whitney ("Whitney"), Doc. No. 69, the Court hereby ADOPTS the R&R, for the reasons expressed therein, ALLOWS the Motion for Summary Judgment, and DISMISSES this case. Judgment shall enter with each side to bear its own costs. For the sake of completeness, the Court adds the following observations.

1. Whitney asserts that he "did not consent to a magistrate judge, and there does not seem to have been a specific referral to Judge Kelley regarding a ruling on summary judgment." Doc. No. 69 at 2. He contends that this casts doubt on the magistrate judge's jurisdiction to rule on the motion. Id. Because he inaccurately describes this case's procedural posture, this

objection is plainly wrong. On September 11, 2014, the Court referred the case to Magistrate Judge Kelley "for full pretrial case management, including all dispositive motions, non dispositive motions and pending motions." Doc. No. 29 (emphasis added). Further, as Magistrate Judge Kelley merely issued an R&R (exactly what the Court requested of Judge Kelley in the Order of Reference)—it is today's order which decides the motion—Whitney's consent was not required. See 28 U.S.C. § 636(b)(1)(B).

2. Whitney asserts that Santos played a role in denying him the promotion, thus warranting a trial he contends. See Doc. No. 69 at 4. Record evidence does support Santos' participation—Santos testified that she "would recommend [associates] for promotion and then senior management would review and make the final decision for promotion." Doc. No. 64-5 at 8. And even as a non-decision maker, Santos's influence renders her animus relevant to Whitney's discrimination claims. See Staub v. Proctor Hosp., 562 U.S. 411 (2011). Drawing all inferences in Whitney's favor, the record shows that a person with influence in the promotion process (Santos) had made remarks indicating gender-based animus against Whitney as a male. This alone, however, cannot meet Whitney's burden at summary judgment in this case.

Besides Santos, the record reveals four individuals who supported the decision to put Whitney on the Development Plan, and generally concurred with the sentiment that his performance did not warrant a promotion. As the R&R notes, "Santos' supervisor Sara Shaughnessy, who attended meetings with Plaintiff, also reviewed and approved the development plan." Doc. No. 68 at 14. Shaughnessy specifically arrived at this conclusion based off "hear[ing] Mr. Whitney discuss the products and areas of the business over which he had responsibility to plan." Doc. No. 55-4 ¶ 5. These observations led her to "believe that Mr. Whitney could have been more knowledgeable regarding the products and areas of the business

over which he had planning responsibility," and that he could have "demonstrate[d] a stronger ability to drive the business at a strategic level by doing things like identifying trends, opportunities, and challenges, and coming up with solutions to address them." Id. ¶ 6; see also id. ("Also, I believe that Mr. Whitney could have been more clear, concise, and articulate in his communications regarding the business he administered.").

Further, Abraham Landau, Whitney's immediate supervisor (and someone Shaughnessy supervised), testified that Whitney's performance "was not at a point where it deemed promotion [sic]," in part because he failed to "show the leadership or the planning ability to be a manager." Doc. No. 55-28 at 5-6.[1] In addition, two former Planning Managers to whom Whitney previously reported, Mia Arcella and Julie Twomey, both agreed with the Development Plan and the statements it contained. See Doc. Nos. 33 (Arcella affidavit); 34 (Twomey affidavit).

Against this corpus of evidence, Whitney only asserts that other managers had informed him that he was performing well. Doc. No. 64 ¶ 117. Taken as true, this assertion does not contradict the managers' assessments—one can both generally perform well, and still have room for improvement (or fall short of what is necessary for a promotion).[2] Further, Whitney only offers his own conclusory statements that he was a better candidate than Tatiana Kidd, the employee who received the promotion. See, e.g., id. ¶ 115. Without any actual evidence of either Kidd's performance or discriminatory animus by the decision maker, Whitney is left with a summary judgment record establishing a decision to favor a viable candidate for promotion (Kidd) over a candidate evaluated as not ready for promotion. That determination was made by

---

[1] Whitney does not argue that, as someone Santos had supervised, Doc. No. 55 ¶ 77, her biases infected Landau's perceptions of Whitney's performance. Nor does he allege that Landau himself had any discriminatory animus against Whitney.
[2] Landau's deposition characterized Whitney's performance essentially that way. See Doc. No. 55-28 at 10 (assessing Whitney's performance as "on the low end of good").

3

senior management, including four individuals whom Whitney does not allege harbored any discriminatory animus, and was based on essentially uniform recommendations from five managers, each of whom had an independent basis (aside from Santos's views) for his or her opinions. In these circumstances, Whitney has failed to meet his burden on the third prong of the burden-shifting analysis—he has not offered sufficient evidence that discriminatory animus motivated the decision to not promote him.

3. In response to Whitney's contention that the constructive discharge and harassment allegations present fact questions for a jury, see, e.g., Doc. No. 69 at 4-5, the Court notes that the First Circuit has stated that "summary judgment is an appropriate vehicle for policing the baseline for hostile environment claims." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (internal citation, quotations, and alterations omitted). For the reasons the R&R elucidated, Whitney's claims failed to meet that baseline.

4. Whitney objects to the R&R's exclusive focus on Whitney's March 18-20, 2013 complaint to Alayn Ingham as the relevant protected activity for his retaliation claim. Doc. No. 69 at 6. Assuming, arguendo, that his other complaints, which occurred in or around late 2012, see Doc. No. 64 ¶¶ 97, 98, are protected activity which Santos knew about, they do not change the ultimate conclusion. Whitney first must demonstrate a prima facie case, which requires proving that: 1) he undertook protected conduct; 2) he suffered a material adverse action from NBC; and 3) a causal nexus exists between the two. Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015). The Court assumes, without deciding, that the few months between Whitney's complaints and the material adverse action of the promotion denial is sufficient temporal proximity to make out a prima facie case. See DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008).

"Once the plaintiff makes out this prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory explanation for its actions." Planadeball, 793 F.3d at 175. NBC's concerns about Whitney's performance clearly meet this burden. Having met this burden of production, "the burden shifts back to the plaintiff to show that the defendant's explanation is a pretext for unlawful retaliation." Id. Because Whitney offers no evidence of retaliatory animus besides temporal proximity, and "temporal proximity on its own is insufficient to establish pretext," Pagan-Colon v. Walgreens of San Patricio, Inc., 697 F.3d 1, 10 (1st Cir. 2012), summary judgment is proper.

    SO ORDERED.

    /s/ Leo T. Sorokin
    Leo T. Sorokin
    United States District Judge